IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

– – –

SMART DENTURE CONVERSIONS, LLC: 24-cv-507 JCB
                                :
        vs.                     :
                                :
STRAUMANN USA, LLC              :


-----

TRANSCRIPT

-----


Motion Hearing held before the
Honorable J. Campbell Barker, USDC
Judge held via teleconference on the 13th
day of November 2024 at 11:13 a.m.


KIMBERLY A. BURSNER, RPR

```
 1    COUNSEL APPEARED AS FOLLOWS

 2                    Richards, Layton & Finger
                      BY: FREDERICK L. COTTRELL, III, ESQ
 3                         for the Plaintiff

 4                    Smith Anderson
                      BY:  KELSEY I. NIX, ESQUIRE
 5                         HOPE GARBER, ESQUIRE
                              for the Plaintiff
 6
                      Shaw Keller, LLP
 7                    BY:  NATHAN HOESCHEN, ESQUIRE
                              for the Defendant
 8
                      Haug Partners, LLP
 9                    BY:  MARK CHAPMAN, ESQUIRE
                           GEORG REITBOECK, ESQUIRE
10                            for the Defendant

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              THE COURT:  We're here this morning
 2         for a hearing on the motion to dismiss in
 3         case number 124 CV 507 in the District of
 4         Delaware, Smart Denture Conversions versus
 5         Straumann, U.S.A.
 6              Can I have the counsel for the
 7         parties make their appearances, please?
 8              MR. CHAPMAN:  In your courtroom,
 9         Your Honor, Mark Chapman for defendant
10         Straumann.
11              THE COURT:  Thank you.
12              MR. NIX:  Good morning, Your Honor.
13         This is Kelsey Nix for the plaintiff and also
14         with me on the line are Delaware local
15         counsel Fred Cottrell from the Richards,
16         Layton, Finger firm and my colleague from
17         Smith Anderson and co-counsel, Hope Garber.
18              THE COURT:  All right.  Good morning
19         to you all.
20              MR. CHAPMAN:  And, Your Honor, I
21         should add that my colleague, Georg
22         Reitboeck, is on the line, as well as our
23         local Delaware counsel, Nathan Hoeschen, of
24         Shaw Keller.
25              THE COURT:  Good morning to you as
```

1    well.

2         Well, Mr. Chapman, since this is your

3    motion, would you like to begin with your

4    presentation?

5         MR. CHAPMAN:  Certainly.  Thank you.

6         May it please the Court.  Defendant,

7    Straumann, has moved to dismiss plaintiff's

8    complaint under Rule 12(b)(6) because the

9    claims of the asserted patent are indefinite.

10        The claims are indefinite because

11   they're hybrid claims.  They cover an

12   apparatus, a dental system, but they also

13   include a method step.

14        This method step requires a dentist

15   using the dental system to apply an axial

16   force during the procedure and this axial

17   force to release the temporary screw from the

18   abutment.

19        And because of this method step, it's

20   unclear whether infringement occurs when the

21   dental system is made or sold or only when

22   someone actually uses the dental system,

23   including applying this force that releases

24   the temporary screw.  As a result, because of

25   that uncertainty, the claims are indefinite.

```
 1              And what I wanted to do this morning
 2         was this doctrine, this hybrid claim,
 3         indefiniteness doctrine, is based on a line of
 4         federal circuit cases, beginning with the IPXL
 5         decision, and I wanted to briefly discuss the
 6         case law and then look at the claim language
 7         of the patent in this case.
 8              So the take away from the cases is
 9         that an apparatus claim is indefinite if it
10         includes a limitation that requires a user of
11         the apparatus to perform some action.
12              So, in IPXL, for example, the claims
13         were indefinite because the limitation
14         required a user of the electronic financial
15         transaction system to use the input means to
16         change the predicted transaction information
17         or accept the displayed transaction.
18              In the Katz case, the claims were
19         indefinite because they required a user, the
20         caller of the telephone interphase system, to
21         digitally enter data.  And in the Hamilton
22         Beach case, which, of course, is a case from
23         the District of Delaware, the claims were
24         indefinite because they required a user to
25         insert brew baskets into the claimed average
```

1    brewing machine and to cause that machine to

2    heat the water.

3            Now, the plaintiff has cited cases

4    that hold that an apparatus claim is not

5    indefinite if the limitation merely describes

6    a capability or a configuration of the

7    apparatus as opposed to requiring a user to

8    perform an action.

9            So, for example, in the Master Mine

10   case which was prominently cited in the

11   plaintiff's opposition brief, the claims were

12   not indefinite because the limitation

13   described capabilities of the reporting module

14   of the software application; namely, that it

15   presents a set of user selectable database

16   fields that it receives from the user a

17   selection and that it generates a database

18   clearly.

19           Similarly, in the Ultimate Pointer

20   case the claims were not indefinite because

21   the limitation described the capability of the

22   image sensor of the handheld pointing device.

23           THE COURT:  So, Mr. Chapman, can I

24   ask regarding the Master Mine case, is the

25   distinction you are drawing that the claim

1       language there had the subject of the verb,

2       the action verb being the reporting module

3       and it stated the reporting module receives

4       from the user certain information and you

5       think that the result would be different if

6       the claim language instead presented the user

7       as the subject and said the user provides.

8              So there is a difference between a

9       module, an inanimate object receiving

10      something, which was found there to be a

11      system or a capability and a user providing

12      the same thing which your argument falls on

13      the indefiniteness side of the line.

14             MR. CHAPMAN:  Yes.  I think if you

15      look at these cases and I was going to get to

16      the ultimate point here, but that is exactly

17      right.

18             I think when the claims are directed

19      to what the user has to do, the user has to

20      perform some action, they fall within the

21      scope of this doctrine and they are

22      indefinite.  Indefinite.

23             We see that in IPXL.  We see it in

24      Katz.  We see it in Hamilton Beach.

25             On the other hand, if the claim is

1    describing what the machine is doing in

2    particular with respect to Master Mine, this

3    reporting module, then it is not indefinite

4    because you are just describing the capability

5    or configuration of the apparatus itself.

6          THE COURT:  And do you think there

7    has been any drift in the federal circuit's

8    treatment of this issue over time because I

9    do notice that your primary cited cases are

10   from 2005, 2011 and 2011 again.  Whereas, the

11   plaintiff is relying on Master Mine, which

12   was 2017, HTC, which was 2012 and Ultimate

13   Pointer, which was 2016, all of which come

14   after your cited cases.

15         Do you think there has been any

16   drift?

17         MR. CHAPMAN:  I don't think that

18   there has been a drift.  I think what matters

19   is what does the specific claim language at

20   issue say.

21         THE COURT:  Do you have any cases

22   from 2012 onward where the federal circuit

23   found claim language indefinite because of

24   this distinction between the user or a human

25   being factor and a machine being the subject

1        of the verb?

2                MR. CHAPMAN:  I think the latest

3        cases are the ones from 2011.  I think it's

4        the Katz case and Rembrandt.

5                THE COURT:  Right.  And I see you

6        have some district court cases going that way

7        like the 2015 coffee machine or beverage

8        machine case.

9                Go ahead.

10               MR. CHAPMAN:  That's fine.  I

11       appreciate that.

12               I think where I was was I was just

13       making my way through the cases and I just

14       wanted to touch upon one more case which the

15       plaintiff cited and that is the Arthrodesis

16       case.  Again, this is a case where the Court

17       found that the claims were not indefinite

18       because they fall on the side of the cases

19       where the limitation is merely describing how

20       the apparatus or component of it is

21       configured.

22               This is the one with the jig arm

23       component and the jig base component.  Again,

24       if you look at the claim language is that

25       which will be positioned.

1          THE COURT:  That seems like an easy

2     one because it's future tense, so if that is

3     not describing a capability that can never be

4     infringed.

5          MR. CHAPMAN:  Correct.  So,

6     obviously, the issue presented by this motion

7     is which side of the line do the claims in

8     this case fall.

9          And our submission is that claims are

10     indefinite because the limitation in this case

11     requires the user of the dental system to

12     perform an action; namely, the dentist who is

13     using the system has to apply the axial force

14     that causes the temporary screw to release

15     from the abutment.

16          And I will just turn to my first

17     slide here just to show you the claim language

18     from claim one.

19          Now, there is two independent claims

20     in the patent.  Claim one and claim number

21     nine.

22          Claim one, as you see it, recites a

23     dental system comprising four components, an

24     implants abutment, a definitive screw, a

25     coping and a temporary screw.

1          And then at the end of the claim is

2      the limitation that's at issue in the motion.

3      And this limitation requires an axial force to

4      release the coping and the temporary screw

5      from the implant abutment.  And it also states

6      that this axial force is from pick-up

7      processing.

8          Now, pick-up processing, if you read

9      the patent, it explains that that is the step

10     in the denture conversion procedure where the

11     dentist picks up the coping and the temporary

12     screw from the patient's jaw to remove them

13     from the abutment.

14         I'm just going to move to the next

15     slide to show you figures five and figure six.

16         So the claim language in these

17     figures, they are all in our brief, our

18     opening brief.  Figure five you can see that

19     the temporary screw and the coping are

20     connected to the implant abutment prior to the

21     pick-up process, according to the

22     specification.  And then after the pick-up

23     process, figure six shows the path of the

24     temporary screw and this embodiment and the

25     coping released from the implant abutment.

1     And you can see the two arrows show the force
2     that the dentist is applying, the axial force,
3     whether he or she is prying the denture off
4     the patient's jaw.
5            And then the next slide, again, this
6     is quoted in our opening brief, it's the
7     associated passage from the specification
8     which just repeats what I said, which is the
9     prothesis and the coping and the temporary
10    screw cap are pulled off as shown by the
11    arrows in figure six.
12           So when the patent claim the first
13    two pick-up processing, this is the act of the
14    dentist picking up the coping which the
15    temporary screw is then released from the
16    abutment.
17           One more slide here on figure 75
18    which our understanding is this is the
19    embodiment of the patent that the patentee
20    tried to cover with claims in this patent.
21    Again, same idea that it is released from the
22    abutment with axial force.  Again, it's the
23    dentist who is lifting this device off the
24    patient's jaw.
25           So our submission is when you get

1    back to this limitation in claim one, it

2    requires the dentist, the user of the system,

3    to perform an act.  He or she has to apply an

4    axial force and that axial force has to

5    release the coping of the temporary screw from

6    the abutment.

7         And just very quickly, claim nine in

8    the next slide, this is the other independent

9    claim.  Same basic structure.  It's a dental

10   system with the same four components and then

11   you have this limitation at the end and,

12   again, the limitation requires an axial

13   pick-up force to release the temporary screw

14   post from the implant abutment.

15        And, again, it states that the axial

16   force is in response to -- the limitation

17   states that this axial force is in response to

18   and/or during pick-up processing.

19        So, again, just like claim one, our

20   submission is that claim nine requires the

21   user, the dentist, to use the system, apply

22   the axial force during pick-up processing and

23   that must release the temporary screw from the

24   abutment.

25        And I think the way we look at this,

1          these are not limitations that merely describe

2          a capability for a configuration of the screw.

3          It would have been fine for the patentee to

4          have drafted these limitations to have said,

5          you know, that this is capable of this or

6          configured to do this.

7               You know, a temporary screw capable

8          of being released upon the application of an

9          axial force, et cetera.  Or a temporary screw

10         configured to release or a temporary screw

11         which will be released like in the Arthrodesis

12         case.  But that's not the way the claim is

13         drafted.

14              And I think the take away from the

15         case law is, it really matters how the claim

16         is drafted.  Here, the limitations are

17         directed to the action performed by the user

18         applying an axial force and the effect, the

19         result of that action, which is that the

20         temporary screw is released from the abutment.

21              THE COURT:  All right.  One big

22         picture question for you is about the

23         doctrine.

24              So, I understand the concept that if

25         one claim recites both apparatus and

1       functional language that the average reader

2       may not have clear notice about when the

3       infringement occurs and whether contributary

4       infringement standards apply which can involve

5       mens rea.

6               If I, as the Court, were to simply

7       construe -- construe these final limitations

8       in claim one and claim nine as apparatus

9       claims as part of claim construction, that can

10      be done now or at a later stage, would that

11      remove the ambiguity that you are arguing

12      exists because now I construed the claims and

13      that is claimed that res judicata, at least as

14      to you, and perhaps judicial estoppel against

15      the plaintiff if the plaintiff ever tries to

16      argue in another case that that's functional

17      language, it would have won this motion, but

18      arguing otherwise it would presumably be

19      estopped from ever denying that that is not

20      functional language.

21              So would that resolve the difficulty

22      or does that not matter because you have to

23      look at at the time the patent issued?

24              MR. CHAPMAN:  I think -- I have a

25      two-fold response to that.  First of all, the

1    patent owner who applies for the patent and

2    pursues it chooses the claim language and

3    there is many many cases that say that the

4    courts are not empowered to rewrite the claim

5    language except in various circumstances that

6    I don't think apply here.  It's not like it's

7    a typo or it's obvious to one of ordinary

8    skill that they should have used a different

9    word.

10          And so I think the Court has to

11   decide based on the plain and ordinary meaning

12   of these words whether or not it comes within

13   the scope of this doctrine.  To construe them

14   with the goal of avoiding the doctrine sounds

15   to me like an attempt to rewrite the claim

16   language, but I guess I don't fully know what

17   the construction would be.

18          I would also point out that, for what

19   it's worth, the plaintiff has not advocated

20   that you do that.  They are relying on the

21   plain and ordinary meaning of the claim

22   language.  Apart from this issue, they have

23   not identified any ambiguity or term that

24   needs to be construed.

25          THE COURT:  Let me also ask you

```
 1        about the District of Delaware's decision in
 2        Acceleration Bay versus Activision Blizzard
 3        which addressed a definiteness issue in the
 4        district court, although the federal circuit
 5        did not.
 6              In that case, the claim recited a
 7        computer network wherein an original --
 8        originating participant sends data to other
 9        participates and I gather that the participant
10        is a human participant.  The verb then is
11        sends data.
12              Do you think that district court
13        decision was just wrongly decided?  Again,
14        that's not precedential even within the
15        District of Delaware, but I'm just curious.
16              Do you think that was a correct
17        application of the doctrine or if you were
18        counsel you would have taken an appeal to
19        dispute that?
20              MR. CHAPMAN:  Quickly looking at the
21        decision, Your Honor.  My reaction is that it
22        was wrongly decided when you look at Katz and
23        IPXL.  Those cases look like they are
24        directly on point because in both of those
25        cases you have humans being required to do
```

```
1          something under the claim language and that
2          appears to be the case in the Acceleration
3          Bay case if you are referring to term 38.
4                    THE COURT:  Yes.  My last question
5          for you is:  I notice that your motion and
6          briefing is not making anything out of the
7          fact that the title of the patent is a screw
8          attached pick-up dental coping system and
9          methods.
10                    The abstract of the patent also says
11         in its first line, quote, a temporary
12         alignment system and methods.
13                    Is there a reason you are not doing
14         something with the use of methods as part of
15         the description of the patent in the abstract
16         and the title?  Perhaps those are not legally
17         recognizable and I just don't know that.
18                    MR. CHAPMAN:  I would say this:  I
19         think it's interesting in informative context
20         here because this invention is all about this
21         procedure.  Right.  This is an apparatus
22         that's used in a dental procedure.  And so
23         almost by definition, the description and as
24         we point out in our brief, the claim language
25         is all wrapped up in the method.
```

1              I don't think the fact that the title

2         in the abstract mentioned the method.  I have

3         not seen a case that points to that as being

4         relevant under the case law, but it certainly

5         is consistent with the overall point of this

6         patent which is that it is a system for a

7         dentist to use in this procedure.

8              THE COURT:  Okay.

9              MR. CHAPMAN:  Your Honor, one more

10        thing we just wanted to point out is the

11        coffee maker case.  Hamilton Beach.

12             I think this case is, again, I think

13        the claim language is important and you have

14        to really look at the claim language.  I think

15        this is the case that's most analogous to our

16        case for two reasons.

17             One, even though it does not mention

18        the human in the claim, it does not talk about

19        or cite a user, the Court still found the

20        claims indefinite because when you read the

21        limitation -- and this is up on the slide --

22        it was clear that the claims require a human

23        to do something.  Mainly insert these brew

24        baskets in to the machine.

25             In the very same way, we argue that

1    our claims or the claims of the plaintiff's

2    patent require a dentist to do something.  To

3    apply this force and that has to cause the

4    temporary screw to be released from the

5    abutment.

6          So we think that case is instructive

7    because of the factual analogy.

8          THE COURT:  All right.  Very well.

9    Thank you, Mr. Chapman.

10          Mr. Nix, will you be arguing for the

11    plaintiff?

12          MR. NIX:  Yes.  I will.  Thank you

13    very much, Your Honor.

14          THE COURT:  All right.  You may

15    proceed.

16          MR. NIX:  Thank you.  So let me

17    start by saying, first, we have a number of

18    cases that give us a number of important

19    principles to enable us to decide this issue.

20          One principle is that this hybrid

21    doctrine is a very narrow doctrine.  It's, as

22    Your Honor I believe noted, it falls in

23    disfavor and it's a very limited case.  In

24    essence, that's the way that Delaware

25    characterizes the doctrine.

```
 1              Second, I would like to go back to
 2       the Acceleration Bay case that you talked
 3       about.  That is a very important case that
 4       talks about a couple of the principles that
 5       would guide the analysis of the claim language
 6       here which I will get to in a moment.
 7              First, that case that even if the
 8       claim refers to a user action, even so, it
 9       assumes that there is a reference to a user
10       action, the claim can only be found indefinite
11       if it explicitly claims the act and not if it
12       claimed only the system's capability to
13       receive and respond to the user's action.
14              And the second point that the
15       Acceleration Bay case makes -- the second
16       point the case makes is that system and
17       apparatus claims are indefinite if they do
18       functional language that is not specifically
19       tied to structure, but instead appears in
20       isolation.
21              So what I would like to do, Your
22       Honor, is look at the claim language that's at
23       issue here in light of those two principles.
24              One, that if you can refer to user's
25       action because it's claiming the system's
```

1    capability to respond to the user's action.

2              And, second, functional language is

3    perfectly appropriate it is tied to the

4    structure.

5              So does Your Honor have available the

6    facts of claim one?

7              THE COURT:  Yes.  I'm looking at it.

8              MR. NIX:  Excellent.  I would like

9    you to look at claim one.  Claim one is

10   directed to the dental system that includes

11   four components:  The implant abutment, a

12   coping and two different screws.  A

13   definitive screw and a temporary screw.  The

14   definitive screw is the one that's inserted

15   later and makes the -- to proceed with a

16   permanent installment.

17             The temporary screw is the focus of

18   the motion.  It's a very important part of the

19   invention as well.

20             The claim describes the temporary

21   screw with both physical limitations and with

22   functional limitations.  So the impact, the

23   claim describes the temporary screw as having

24   an axis, a link, a width, a proximal head

25   portion.  Proximal being here in the direction

1    away from the patient's jaw and a distal
2    portion that is in the direction towards the
3    patient's jaw.  So those are six physical
4    limitations.
5            It also has two different functional
6    limitations.
7            First, wherein the temporary screw is
8    rotatable in the distal direction.  That is
9    rotating in to or toward the patient's jaw to
10   engage the implant abutment.
11           The second functional limitation is
12   the focus of the motion which recites and
13   wherein an axial force in the proximal
14   direction that is along the trans axis and
15   away from the patient's jaw releases the
16   temporary screw and the coping.
17           Now, as you note, that limitation
18   does not recite or identify an actor who
19   either rotates the temporary screw or exerts
20   an axial force.  Under the case law, that is
21   an indication that the limitation is a
22   functional limitation defining the capability
23   of the structure.  Not a method step.
24           In fact, that is exactly what we have
25   here.  These are functional limitations

1       defining the capabilities.

2               The screw, the temporary screw, is

3       designed and structured so they can perform

4       both functions.  First, wherein it is

5       rotatable and, second, wherein an axial force

6       in a proximal direction, will release the

7       screw.

8               And claim nine describes a temporary

9       screw in a similar fashion where the male

10      thread on the temporary screw release from the

11      abutment thread in response to a, quote,

12      predetermined axial pick-up force in a

13      proximal direction.

14              Now, why did they claim this

15      temporary screw in that fashion using

16      functional limitation?  We're all familiar

17      with using ordinary-type screws, put screws to

18      machine screw.  Once you screw them in, they

19      ordinarily stay in place unless you unscrew

20      them.  The temporary screws for this invention

21      are a little bit different because the claim

22      limitations in both claims nine and one recite

23      that they release in response to an axial

24      force in a proximal direction.

25              So what is important to take away --

1    one important take away from that claim

2    language is that the act of exerting the axial

3    force is not the key.  The key is that the

4    temporary screw has a specific structure that

5    causes it to release in response to the axial

6    force.

7            A structure that satisfies this

8    functional limitation would also satisfy the

9    claim language.  And we described in our

10   opposition brief where the specification is

11   not one or two, but multiple different

12   structures that perform that function.

13           It's widely accepted in patent claim

14   drafting to define a structure with a

15   functional limitation exactly as the inventors

16   did here.  The inventors claim their temporary

17   screw with physical and functional

18   limitations.  That is very proper.

19           And the functional limitation here is

20   tied to a specific structure, so we can look

21   at the cases and we can compare what claim and

22   earlier cases that did or did not pass muster

23   as to whether they're indefinite, but

24   ultimately what we have to focus on is the

25   specific claim language here.

1          And the test is whether they use the

2     language in the claim has been read by a

3     person of the ordinary skill in the art, that

4     is the central professional, whether that

5     person would have reasonable certainty as to

6     the scope of the invention.

7          To find these claims as a whole to be

8     indefinite one would have to conclude that a

9     professional reading each claim, claims one

10    and claim nine in their entirety would be so

11    confused as to what the scope of the claim is

12    that they would not know where or how

13    infringement occurred.

14         I submit to Your Honor that is simply

15    not the case.

16         THE COURT:  Mr. Nix, may I ask you

17    the same question that I asked Mr. Chapman,

18    which is, if I conclude that the correct

19    reading of the final clause of claim one and

20    claim nine is that the clauses state a

21    functional limitation on the apparatus and do

22    not state a process itself, does that ruling

23    because it would be necessary for you to win

24    this motion estop your client from ever

25    arguing on claim construction here or in

1     another case that these final two clauses of

2     the two claims are, in fact, process claims?

3              MR. NIX:  I believe, Your Honor,

4     that it is certainly entitled at this stage

5     to make a claim construction of a limited

6     part of the claim that's required for you to

7     resolve the motion to dismiss as an issue of

8     law.  And, you know, the plaintiff's position

9     is that those two limitations are, in fact,

10    functional limitations.  They are not method

11    steps and that claims as a whole are

12    apparatus claims defining a dental system.

13             So, if that is Your Honor's claim

14    construction, there may be an opportunity to

15    appeal it or to challenge it later, but that

16    would be -- as I think you noted in discussion

17    with Straumann's counsel, that would be a

18    ruling for the Court for purposes of this

19    case.

20             THE COURT:  Mr. Nix, let me ask you

21    the same question I asked Mr. Chapman about

22    the title of the patent, as well as the

23    abstract.

24             MR. NIX:  Yes.

25             THE COURT:  They both refer to a

1        system and methods describing both a product,

2        an apparatus, that being the system, and a

3        process that being a method.

4               As you know in patent law, a method

5        is the same as a process.  So what am I

6        supposed to do with that and does that

7        actually help the defendant's argument that

8        your claims, as drafted, cover aspects of both

9        a system and a method?

10              MR. NIX:  Your Honor, the use of the

11       word "method" in the claim of the abstract

12       and the description of method even in the

13       specification lends zero weight to

14       defendant's argument.

15              The determination of whether a claim

16       is a method or an apparatus is placed on

17       analyzing the claim itself.  And, of course,

18       given that attorneys who draft patents will

19       include the word "method" and "apparatus"

20       routinely in applications by the party

21       abstract the descriptions and specification is

22       that that specification serves as a predicate

23       or basis for multiple sets of patent claims.

24              As it turns out, there is not a

25       method claim in this patent because it could

```
 1        very well be continuation or divisional
 2        applications that would be based on the same
 3        specifications that would include claims
 4        directed to methods, and so the fact that the
 5        word "method" is used in the title and the
 6        abstract does not indicate in any way that
 7        they're method claims or that they are even a
 8        method step in these claims.
 9              THE COURT:  All right.  Let me ask
10        you to look at other parts of the
11        specification, not just the title and the
12        abstract.  But at column seven, lines fifteen
13        through nineteen of that column seven it says
14        there, the systems and methods disclosed
15        herein can be used with protheses for
16        attachment to both the upper and lower jaw.
17        So that's one reference to methods.
18              Similarly, at line six -- or excuse
19        me -- column six, lines 34 to 39, that
20        sentence also refers to, quote, the systems
21        and methods disclosed herein, end quote.
22              I think you would have to agree that
23        the federal circuit has held in Phillips that
24        the specification is the single best guide to
25        interpreting the claim language.
```

1             So what am I supposed to do with

2       those parts of the specifications saying that

3       the patent discloses systems and methods?

4             MR. NIX:  The specification to the

5       patent is disputed in described methods, Your

6       Honor.  But the claims that were allowed do

7       not claim methods.  These are all apparatus

8       claims.

9             THE COURT:  Okay.

10            MR. NIX:  The specification would be

11      appropriate support for different set of

12      claims directed to the methods that are

13      disclosed in the patent, absolutely.

14            THE COURT:  Sorry to interrupt you.

15      Just to paraphrase.  You're saying the

16      specification discloses methods and maybe

17      that would support a continuation patent that

18      claims methods, but this patent claims only

19      products, even though it discloses products

20      and methods.  That's what you are arguing?

21            MR. NIX:  Yes.  That's absolutely

22      right, Your Honor.  As we talked about

23      before, some of these claims include

24      functional limitations which are still

25      apparatus claims.

```
 1                  THE COURT:  Okay.  And what do you
 2          make of the plaintiff's reliance on cases
 3          like IPXL and the Hamilton Beach case where
 4          the claim either explicitly recites the user
 5          doing something or implicitly uses a verb
 6          without a clear subject but the implicit
 7          subject is a human, like the brewing machine
 8          being operated by a human?  Do you think
 9          those are still --
10                  MR. NIX:  Again, the cases are --
11          they define certain principles of law that
12          ultimately each case would rise or fall based
13          on the specific claim language in particular
14          cases which, as Your Honor knows, is true in
15          all cases.
16                  But it really goes back to what I
17          started with in Acceleration Bay and you can
18          certainly have activities performed by a user
19          in an apparatus claim and it will not be
20          confusingly vague or confusingly indefinite to
21          one of ordinary skill in the art if it
22          explicitly -- the term indefinite only
23          explicitly claims the user's account as
24          opposed to claiming the system's capability to
25          respond to the user's actions.
```

1          Here in claim one it says, wherein an

2     axial force to have proximal direction to

3     loosen the coping of the temporary screw.

4     This claim is explicitly defining what the --

5     what the apparatus does in response to this

6     very particular force.  It does not claim --

7     it does not claim the act itself.  This is not

8     a method step in a sequence of steps to brew

9     coffee, for example, as in the coffee maker

10    case that defendant relies on where the claims

11    require the user to insert the brew baskets

12    into the brewing machine, place the filter

13    pack into the brewing reservoir, lift the lid

14    to permit water to be freely poured into a

15    water reservoir.  Those are method steps.

16    That's a method claim.  That is not our case.

17    Our case --

18          THE COURT:  So, Mr. Nix, in that

19    case, why didn't your client draft this final

20    limitation to say, wherein the temporary

21    screw is such that an axial force, yada yada

22    yada?  Why didn't they draft it to say the

23    screw is of this nature?  Why didn't they

24    draft it to say, now I'm claiming an axial

25    force releases the coping?

1            MR. NIX:  There are multiple ways

2       that patent attorneys can draft claims and

3       the question isn't to necessarily parse

4       exactly what the sequence reporting is.  The

5       test is how would a dental professional read

6       and understand this entire claim starting

7       with the dental system comprising and going

8       all the way to the end.

9            And I submit to Your Honor that a

10      dental professional would have zero difficulty

11      understanding this claim is talking about

12      these four physical components:  An abutment,

13      two screws and a coping.  And the temporary

14      screw has its physical limitations and it has

15      the limitations defined by functional

16      limitations so that it's rotatable and that it

17      releases when an axial force and a proximate

18      force is applied to it.

19            THE COURT:  Well, one point that --

20      I'm going to save this question for your

21      opposing counsel.  All right.  I think I have

22      your argument.

23            Did you want to summarize, Mr. Nix?

24            MR. NIX:  Yes.  Thank you, Your

25      Honor.

```
 1              So, to summarize, I would say that
 2      the cases give us the clear principles that I
 3      have described.  When we look at the actual
 4      claim language, it is abundantly clear that
 5      the challenge limitation is a functional
 6      limitation.  It is not a method step.  And
 7      that would then be a part of the analysis and
 8      the end result analysis that we are
 9      challenging the definiteness of this entire
10      claim under Section 112(b) and I submit that
11      claims one and nine properly construe, at
12      least inform those skilled in the art about
13      the scope of the invention with reasonable
14      certainty.
15              That's all the claim has to do is to
16      inform one skilled in the art about the scope
17      of the invention with reasonable certainty.
18              The flip side is they would have
19      to -- defendants would have to show that there
20      was a demonstrable confusion by a dental
21      professional reading this claim about what the
22      claims mean and when infringement occurs and I
23      submit to Your Honor that wherein an axial
24      force in a proximal direction releases the
25      coping of the temporary screw is abundantly
```

```
 1        clear, crystal clear, to one in the ordinary
 2        skill of the art and they would understand
 3        that that is defining the multiple different
 4        structures in the specification for how that
 5        temporary screw would be configured to release
 6        in response to that particular force.
 7                Thank you, Your Honor.
 8                THE COURT:  Thank you, Mr. Nix.
 9                Mr. Chapman, as you begin your reply
10        argument, I have two questions for you and
11        then I'll let you summarize as well.
12                On my first question, can I invite
13        you to look at claim nine in the patent?
14                MR. CHAPMAN:  If I may, Your Honor,
15        if I could re-get control of the slides, I
16        can show it to the Court.
17                THE COURT:  All right.  So I'm
18        looking at claim nine and you are also
19        displaying it on the power point.
20                So the final clause here, the one
21        that you or your client is arguing makes this
22        claim indefinite refers to the threads of the
23        male threading of the post release from the
24        threads of the female threading of the
25        implants abutment with a predetermined axial
```

1              pick-up force in a proximal direction.  Here

2              is the language I want to emphasize.  In

3              response to and/or during pick-up processing.

4                      Now, this claim does not separately

5              claim that there is pick-up processing

6              happening.  That's not recited earlier, so

7              this final phrase of the wherein clause seems

8              to be using the future tense in the same way

9              that the future tense was used in the

10             Arthrodesis versus Wright Medical case that

11             the District of Delaware held was definite.

12                     What do you have to say to that idea?

13                     MR. CHAPMAN:  I don't think I agree

14             with you that it's expressing this in the

15             future tense.  The verb "release" which is

16             the active verb is present tense and the

17             parties -- the verb release is the active

18             verb in this clause and it is stated to be in

19             the present tense.

20                     And then I would say the last clause

21             that you pointed out to, the one that says,

22             "in response to and/or during pick-up

23             processing" is describing when this is

24             happening, but I don't agree that it is

25             stating it in a way that it is happening in

1      the future.

2            I think, in fact, it reinforces our

3      point here, which is that the axial pick-up

4      force is applied by the user during pick-up

5      processing and that causes the thread of the

6      temporary screw to release, so you have an

7      action by the user and it's causing something

8      to happen and that's what the release clause

9      is directed to.

10           THE COURT:  All right.  Let me then

11     ask my second question and invite you to look

12     at claim one in the final clause of claim

13     one.

14           So I think the plaintiff is arguing

15     that everything after wherein is a functional

16     limitation.  I noticed in the patent that this

17     final wherein clause is not indented

18     separately.  This is true of claim nine as

19     well.  There is, as far as the indentation of

20     the patent goes, there is one indent for the

21     first wherein and the second wherein in terms

22     of purely formatting of this document is

23     contained within the same level of indentation

24     as the entirety of the first wherein clause.

25           Is that at least some visual cue that

1        the drafter was treating the axial force

2        clause as a further refinement of the

3        rotatable clause since they're both at the

4        same level of indentation and then the reader

5        would use that visual cue to understand that

6        both of those clauses are modifications of the

7        temporary screw?

8                MR. CHAPMAN:  No.  The first part of

9        that wherein clause actually uses claim

10       language that would not be indefinite for

11       this reason, because it's describing

12       capability, the thread -- I'm sorry.  The

13       temporary screw is rotatable.  That describes

14       the characteristic of the temporary screw, a

15       functional characteristic.

16               This clause that we're focused on

17       describes a different step in the procedure.

18       A rotatable characteristic of the temporary

19       screw is relevant to the fact that it can be

20       inserted by the dentist at an earlier stage in

21       the procedure using effectively a screwdriver

22       to rotate the threads.

23               This last limitation that we are

24       looking at is directed to a subsequent step

25       where the dentist is pulling it out.  He's not

1    unscrewing it.  He's pulling it out.

2        So I don't think formatting matters,

3    to be blunt.

4        THE COURT:  All right.  Well, then,

5    let me give you a chance to just briefly

6    reply to the plaintiff's argument.

7        MR. CHAPMAN:  Certainly.  I heard

8    counsel for the plaintiff say a couple things

9    that I just wanted to briefly respond to.

10        One was, he invoked the classic

11    definiteness standard which is, is the claim

12    language reasonably clear to one of ordinary

13    skill in the art.

14        I don't dispute that that's the

15    general standard for definiteness, but this

16    doctrine is a little bit unusual because it's

17    not focused on whether the claim language is

18    ambiguous or vague in a technical sense.  It's

19    focused on whether you have an apparatus claim

20    which is one statutory class of a patentable

21    invention mixed up with a method step and

22    methods, of course, are a totally separate

23    statutory class of patentable invention under

24    Section 101.

25        And because they are different

1    classes, the way you look at infringement

2    issues and what constitutes an active

3    infringement is different for an apparatus

4    than for a method.  And I think Your Honor

5    alluded earlier that you can get into issues

6    of whether there is contributary infringement

7    and the knowledge requirement that goes along

8    with that.

9         So the focus here is not so much on

10    what one of ordinary skill look at the claims

11    and glean from them as a technical matter, so

12    much as a matter of law, does the claim mix

13    two different statutory classes of invention.

14    And I think that's an important principle to

15    keep in mind when you are looking at this.

16         The second point I just wanted to

17    make clear -- and this goes back to the

18    Acceleration Bay case, the federal circuit has

19    not stated that you need to expressly recite a

20    user in the claim for this doctrine to apply.

21         In the Master Mine case and other

22    cases they have distinguished Katz and IPXL on

23    that ground, but I'm not aware of any holding

24    that this doctrine -- that the claim language

25    has to expressly recite a user.  In fact, the

1    Hamilton Beach case that you pointed to

2    demonstrates that.

3        If you look at the claims in Hamilton

4    Beach, which I put back up on the screen, they

5    don't recite the user of the beverage brewing

6    system.  It's just clear.  It's implicit, if

7    you will, that the user of the brewing system

8    is the one doing the inserting.  And we would

9    argue that the claims in this case are just

10    like that.  It's clear.  There is no dispute

11    about this, that it is the dentist who is

12    using the dental system who applies this axial

13    force and that that causes the temporary screw

14    to release.

15        So I just wanted to make sure that

16    there was no suggestion that you had to

17    expressly recite the user in the claim

18    language.

19        I don't have anything further, unless

20    Your Honor has any questions.

21        THE COURT:  All right.  Very well.

22    Thank you, Mr. Chapman.  Thank you, Mr. Nix.

23    And thank you to all involved with this

24    hearing for your flexibility to handle it by

25    telephone with all the mechanical and

```
 1          logistical challenges that involves.  I
 2     appreciate that as well.
 3               With that, the motion is on
 4     submission and Court is adjourned.
 5               (At 12:04 p.m. proceedings were
 6       concluded.)
 7                              - - -
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1                    C E R T I F I C A T E

 2

 3

 4          I, KIMBERLY A. BURSNER, Registered

 5    Professional Reporter, do hereby certify that

 6    the foregoing is an accurate transcript of the

 7    proceedings, as reported by me, in the

 8    case herein stated, and that I am neither

 9    counsel nor kin to any party or participant in

10    said action, nor interested in the outcome

11    thereof.

12

13

14                         _____

15                         Kimberly A. Bursner
                           Registered Professional
16                         Reporter

17

18

19

20

21

22

23

24

25
```

MR. CHAPMAN: [16]  3/8 3/20 4/5 7/14
8/17 9/2 9/10 10/5 15/24 17/20 18/18
19/9 35/14 36/13 38/8 39/7
MR. NIX: [13]  3/12 20/12 20/16 22/8
27/3 27/24 28/10 30/4 30/10 30/21
31/10 33/1 33/24
THE COURT: [30]  3/1 3/11 3/18 3/25
6/23 8/6 8/21 9/5 10/1 14/21 16/25 18/4
19/8 20/8 20/14 22/7 26/16 27/20 27/25
29/9 30/9 30/14 31/1 32/18 33/19 35/8
35/17 37/10 39/4 41/21

**1**

101 [1]  39/24
112 [1]  34/10
11:13 [1]  1/16
12 [1]  4/8
124 [1]  3/3
12:04 [1]  42/5
13th [1]  1/15

**2**

2005 [1]  8/10
2011 [3]  8/10 8/10 9/3
2012 [2]  8/12 8/22
2015 [1]  9/7
2016 [1]  8/13
2017 [1]  8/12
2024 [1]  1/16
24-cv-507 [1]  1/4

**3**

34 [1]  29/19
38 [1]  18/3
39 [1]  29/19

**5**

507 [2]  1/4 3/3

**7**

75 [1]  12/17

**A**

a.m [1]  1/16
about [14]  14/22 15/2 17/1 18/20 19/18
21/3 21/4 27/21 30/22 33/11 34/12
34/16 34/21 41/11
absolutely [2]  30/13 30/21
abstract [4]  18/10 18/15 19/2 27/23
28/11 28/21 29/6 29/12
abundantly [2]  34/4 34/25
abutment [19]  4/18 10/15 10/24 11/5
11/13 11/20 11/25 12/16 12/22 13/6
13/14 13/24 14/20 20/5 22/11 23/10
24/11 33/12 35/25
Acceleration [6]  17/2 18/2 21/2 21/15
31/17 40/18
accept [1]  5/17
accepted [1]  25/13
according [1]  11/21
account [1]  31/23
accurate [1]  43/6
act [5]  12/13 13/3 21/11 25/2 32/7
action [14]  5/11 6/8 7/2 7/20 10/12 14/17
14/19 21/8 21/10 21/13 21/25 22/1 37/7
43/10
actions [1]  31/25
active [3]  36/16 36/17 40/2
Activision [1]  17/2

activities [1]  31/18
actor [1]  23/18
actual [1]  34/3
actually [3]  4/22 28/7 38/9
add [1]  3/21
addressed [1]  17/3
adjourned [1]  42/4
advocated [1]  16/19
after [3]  8/14 11/22 37/15
again [12]  8/10 9/16 9/23 12/5 12/21
12/22 13/12 13/15 13/19 17/13 19/12
31/10
against [1]  15/14
agree [3]  29/22 36/13 36/24
ahead [1]  9/9
alignment [1]  18/12
all [23]  3/18 3/19 8/13 11/17 14/21 15/25
18/20 18/25 20/8 20/14 24/16 29/9 30/7
31/15 33/8 33/21 34/15 35/17 37/10
39/4 41/21 41/23 41/25
allowed [1]  30/6
alluded [1]  40/5
almost [1]  18/23
along [2]  23/14 40/7
also [10]  3/13 4/12 11/5 16/18 16/25
18/10 23/5 25/8 29/20 35/18
although [1]  17/4
am [3]  28/5 30/1 43/8
ambiguity [2]  15/11 16/23
ambiguous [1]  39/18
analogous [1]  19/15
analogy [1]  20/7
analysis [3]  21/5 34/7 34/8
analyzing [1]  28/17
Anderson [2]  2/4 3/17
another [2]  15/16 27/1
any [8]  8/7 8/15 8/21 16/23 29/6 40/23
41/20 43/9
anything [2]  18/6 41/19
Apart [1]  16/22
apparatus [22]  4/12 5/9 5/11 6/4 6/7 8/5
9/20 14/25 15/8 18/21 21/17 26/21
27/12 28/2 28/16 28/19 30/7 30/25
31/19 32/5 33/9 39/19 40/3
appeal [2]  17/18 27/15
appearances [1]  3/7
APPEARED [1]  2/1
appears [2]  18/2 21/19
application [3]  6/14 14/8 17/17
applications [2]  28/20 29/2
applied [2]  33/18 37/4
applies [2]  16/1 41/12
apply [8]  4/15 10/13 13/3 13/21 15/4
16/6 20/3 40/20
applying [3]  4/23 12/2 14/18
appreciate [2]  9/11 42/2
appropriate [2]  22/3 30/11
are [48]
argue [3]  15/16 19/25 41/9
arguing [7]  15/11 15/18 20/10 26/25
30/20 35/21 37/14
argument [7]  7/12 28/7 28/14 33/22
35/10 39/6
arm [1]  9/22
arrows [2]  12/1 12/11
art [6]  26/3 31/21 34/12 34/16 35/2
39/13
Arthrodesis [1]  9/15 14/11 36/10
as [50]
ask [6]  6/24 16/25 26/16 27/20 29/9

37/11
asked [2]  26/7 27/21
aspects [1]  28/8
asserted [1]  4/9
associated [1]  12/7
assumes [1]  21/9
at [39]  1/16 5/6 7/15 8/19 9/24 11/1 11/2
13/11 13/25 15/10 15/13 15/23 15/23
17/20 17/22 19/14 21/22 21/22 22/7
22/9 25/21 27/4 29/10 29/12 29/18 34/3
34/11 35/13 35/18 37/12 37/25 38/3
38/20 38/24 40/1 40/10 40/15 41/3 42/5
attached [1]  18/8
attachment [1]  29/16
attempt [1]  16/15
attorneys [2]  28/18 33/2
available [1]  22/5
average [2]  5/25 15/1
avoiding [1]  16/14
aware [2]  40/23
away [6]  5/8 14/14 23/1 23/15 24/25
25/1
axial [31]  4/15 4/16 10/13 11/3 11/6 12/2
12/22 13/4 13/4 13/12 13/15 13/17
13/22 14/9 14/18 23/13 23/20 24/5
24/12 24/23 25/2 25/5 32/2 32/21 32/24
33/17 34/23 35/25 37/3 38/1 41/12
axis [2]  22/24 23/14

**B**

back [5]  13/1 21/1 31/16 40/17 41/4
Barker [1]  1/14
base [1]  9/23
based [4]  5/3 16/11 29/2 31/12
basic [1]  13/9
basis [1]  28/23
baskets [3]  5/25 19/24 32/11
Bay [6]  17/2 18/3 21/2 21/15 31/17
40/18
be [32]  7/5 7/10 9/25 10/3 14/11 15/10
15/18 16/17 16/24 18/2 20/4 20/10
21/10 26/7 26/10 26/23 27/14 27/16
27/17 29/1 29/2 29/15 30/10 31/19
32/14 34/7 35/5 36/8 36/18 38/10 38/19
39/3
Beach [6]  5/22 7/24 19/11 31/3 41/1
41/4
because [28]  4/8 4/10 4/19 4/24 5/13
5/19 5/24 6/12 6/20 8/4 8/8 8/23 9/18
10/2 10/10 15/12 15/22 17/24 18/20
19/20 20/7 21/25 24/21 26/23 28/25
38/11 39/16 39/25
been [5]  8/7 8/15 8/18 14/3 26/2
before [2]  1/13 30/23
begin [2]  4/3 35/9
beginning [1]  5/4
being [10]  7/2 8/25 8/25 14/8 17/25 19/3
22/25 28/2 28/3 31/8
believe [2]  20/22 27/3
best [1]  29/24
between [2]  7/8 8/24
beverage [2]  9/7 41/5
big [1]  14/21
bit [2]  24/21 39/16
Blizzard [1]  17/2
blunt [1]  39/3
both [11]  14/25 17/24 22/21 24/4 24/22
27/25 28/1 28/8 29/16 38/3 38/6
brew [4]  5/25 19/23 32/8 32/11
brewing [6]  6/1 31/7 32/12 32/13 41/5

B

brewing... [1] 41/7
brief [6] 6/11 11/17 11/18 12/6 18/24 25/10
briefing [1] 18/6
briefly [3] 5/5 39/5 39/9
BURSNER [1] 1/25 43/4 43/14
but [19] 4/12 7/16 14/12 15/17 16/16 17/15 19/4 21/19 25/11 25/23 27/15 29/12 30/6 30/18 31/6 31/16 36/24 39/15 40/23

C

caller [1] 5/20
Campbell [1] 1/14
can [19] 3/6 6/23 10/3 11/18 12/1 15/4 15/9 21/10 21/24 24/3 25/20 25/21 29/15 31/17 33/2 35/12 35/16 38/19 40/5
cap [1] 12/10
capabilities [2] 6/13 24/1
capability [11] 6/6 6/21 7/11 8/4 10/3 14/2 21/12 22/1 23/22 31/24 38/12
capable [2] 14/5 14/7
case [51]
cases [23] 5/4 5/8 6/3 7/15 8/9 8/14 8/21 9/3 9/6 9/13 9/18 16/3 17/23 17/25 20/18 25/21 25/22 31/2 31/10 31/14 31/15 34/2 40/22
cause [2] 6/1 20/3
causes [4] 14/25 25/5 37/5 41/13
causing [1] 37/7
central [1] 26/4
certain [2] 7/4 31/11
certainly [5] 4/5 19/4 27/4 31/18 39/7
certainty [3] 26/5 34/14 34/17
certify [1] 43/5
cetera [1] 14/9
challenge [2] 27/15 34/5
challenges [1] 42/1
challenging [1] 34/9
chance [1] 39/5
change [1] 5/16
CHAPMAN [9] 2/9 3/9 4/2 6/23 20/9 26/17 27/21 35/9 41/22
characteristic [3] 38/14 38/15 38/18
characterizes [1] 20/25
chooses [1] 16/2
circuit [5] 5/4 8/22 17/4 29/23 40/18
circuit's [1] 8/7
circumstances [1] 16/5
cite [1] 19/19
cited [5] 6/3 6/10 8/9 8/14 9/15
claim [103]
claimed [3] 5/25 15/13 21/12
claiming [3] 21/25 31/24 32/24
claims [50]
class [2] 39/20 39/23
classes [2] 40/1 40/13
classic [1] 39/10
clause [13] 26/19 35/20 36/7 36/18 36/20 37/8 37/12 37/17 37/24 38/2 38/3 38/9 38/16
clauses [3] 26/20 27/1 38/6
clear [11] 15/2 19/22 31/6 34/2 34/4 35/1 35/1 39/12 40/17 41/6 41/10
clearly [1] 5/16
client [3] 26/24 32/19 35/21
co [1] 3/17
co-counsel [1] 3/17

coffee [4] 9/7 19/11 32/9 32/9
colleague [2] 3/16 4/1
column [3] 29/12 29/13 29/19
come [1] 8/13
comes [1] 16/12
compare [1] 25/21
complaint [1] 4/8
component [3] 9/20 9/23 9/23
components [4] 10/23 13/10 22/11 33/12
comprising [2] 10/23 33/7
computer [1] 17/7
concept [1] 14/24
conclude [2] 26/8 26/18
concluded [1] 42/6
configuration [3] 6/6 8/5 14/2
configured [4] 9/21 14/6 14/10 35/5
confused [1] 26/11
confusingly [2] 31/20 31/20
confusion [1] 34/16
connected [1] 11/20
consistent [1] 19/5
constitutes [1] 40/2
construction [5] 15/9 16/17 26/25 27/5 27/14
construe [4] 15/7 15/7 16/13 34/11
construed [2] 15/12 16/24
contained [1] 37/23
context [1] 18/19
continuation [2] 29/1 30/17
contributary [2] 15/3 40/6
control [1] 35/15
conversion [1] 11/10
CONVERSIONS [2] 1/4 3/4
coping [15] 10/25 11/4 11/11 11/19 11/25 12/9 12/14 13/5 18/8 22/12 23/16 32/3 32/25 33/13 34/25
correct [3] 10/5 17/16 26/18
COTTRELL [2] 2/2 3/15
could [2] 28/25 35/15
counsel [10] 2/1 3/6 3/15 3/17 3/23 17/18 27/17 33/21 39/8 43/9
couple [2] 21/4 39/8
course [3] 5/22 28/17 39/22
court [12] 1/1 4/6 9/6 9/16 15/6 16/10 17/4 17/12 19/19 27/18 35/16 42/4
courtroom [1] 3/8
courts [1] 16/4
cover [3] 4/11 12/20 28/8
crystal [1] 35/1
cue [2] 37/25 38/5
curious [1] 17/15
cv [2] 1/4 3/3

D

data [3] 5/21 17/8 17/11
database [2] 6/15 6/17
day [1] 1/16
decide [2] 16/11 20/19
decided [2] 17/13 17/22
decision [4] 5/5 17/1 17/13 17/21
defendant [5] 2/7 2/10 3/9 4/6 32/10
defendant's [2] 28/7 28/14
defendants [1] 34/19
define [2] 25/14 31/11
defined [1] 33/15
defining [5] 23/22 24/1 27/12 32/4 35/3
definite [1] 36/11
definiteness [4] 17/3 34/9 39/11 39/15
definition [1] 18/23
definitive [3] 10/24 22/13 22/14

DELAWARE [8] 1/2 3/4 3/14 3/23 5/23 9/15 20/24 36/1
Delaware's [1] 17/1
demonstrable [1] 34/20
demonstrates [1] 41/2
dental [16] 4/12 4/15 4/21 4/22 10/11 10/23 13/9 18/8 18/22 22/10 27/12 33/5 33/7 33/10 34/20 41/12
dentist [13] 4/14 10/12 11/1 12/2 12/14 12/23 13/2 13/21 19/7 20/2 38/20 38/25 41/11
denture [1] 1/4 3/4 11/10 12/3
denying [1] 15/19
describe [1] 14/1
described [5] 6/13 6/21 25/9 30/5 34/3
describes [6] 6/5 22/20 22/23 24/8 38/13 38/17
describing [7] 8/1 8/4 9/19 10/3 28/1 36/23 38/11
description [3] 18/15 18/23 28/12
descriptions [1] 28/21
designed [1] 24/3
determination [1] 28/15
device [2] 6/22 12/23
did [6] 17/5 24/14 25/16 25/22 25/22 33/23
didn't [3] 32/19 32/22 32/23
difference [1] 7/8
different [12] 7/5 16/8 22/12 23/5 24/21 25/11 30/1 35/3 38/17 39/25 40/3 40/13
difficulty [2] 15/21 33/10
digitally [1] 5/21
directed [7] 7/18 14/17 22/10 29/4 30/12 37/9 38/24
direction [10] 22/25 23/2 23/8 23/14 24/6 24/13 24/24 32/2 34/24 36/1
directly [1] 17/24
disclosed [3] 29/14 29/21 30/13
discloses [3] 30/3 30/16 30/19
discuss [1] 5/5
discussion [1] 27/16
disfavor [1] 20/23
dismiss [3] 3/2 4/7 27/7
displayed [1] 5/17
displaying [1] 35/19
dispute [3] 17/19 39/14 41/10
disputed [1] 30/5
distal [2] 23/1 23/8
distinction [2] 6/25 8/24
distinguished [1] 40/22
district [10] 1/1 1/2 3/5 3/23 9/6 17/1 17/4 17/12 17/15 36/11
divisional [1] 29/1
do [25] 5/1 7/19 8/6 8/9 8/15 8/21 10/7 14/6 16/20 17/12 17/16 17/25 19/23 20/2 21/17 21/21 26/21 28/6 30/1 30/6 31/1 31/8 34/15 36/12 43/5
doctrine [13] 5/2 5/3 7/21 14/23 16/13 16/14 17/17 20/21 20/21 20/25 39/16 40/20 40/24
document [1] 37/22
does [14] 8/19 15/22 19/17 19/18 22/5 23/18 26/22 28/6 29/6 32/5 32/6 32/7 36/4 40/12
doing [4] 8/1 18/13 31/5 41/8
don't [17] 8/17 16/6 16/16 18/17 19/1 36/13 36/24 39/2 39/14 41/5 41/19
done [1] 15/10
draft [5] 28/18 32/19 32/22 32/24 33/2

**D**

drafted [4]  14/4 14/13 14/16 28/8
drafter [1]  38/1
drafting [1]  25/14
drawing [1]  6/25
drift [3]  8/7 8/16 8/18
during [6]  4/16 13/18 13/22 36/3 36/22 37/4

**E**

each [2]  26/9 31/12
earlier [4]  25/22 36/6 38/20 40/5
easy [1]  10/1
effect [1]  14/18
effectively [1]  38/21
either [2]  23/19 31/4
electronic [1]  5/14
embodiment [2]  11/24 12/19
emphasize [1]  36/2
empowered [1]  16/4
enable [1]  20/19
end [5]  11/1 13/11 29/21 33/8 34/8
engage [1]  23/10
enter [1]  5/21
entire [2]  33/6 34/9
entirety [2]  26/10 37/24
entitled [1]  27/4
ESQ [2]  2/2
ESQUIRE [5]  2/4 2/5 2/7 2/9 2/9
essence [1]  20/24
estop [1]  26/24
estopped [1]  15/19
estoppel [1]  15/14
et [1]  14/9
even [7]  17/14 19/17 21/7 21/8 28/12 29/7 30/19
ever [3]  15/15 15/19 26/24
everything [1]  37/15
exactly [4]  7/16 23/24 25/15 33/4
example [3]  5/12 6/9 32/9
Excellent [1]  22/8
except [1]  16/5
excuse [1]  29/18
exerting [1]  25/2
exerts [1]  23/19
exists [1]  15/12
explains [1]  11/9
explicitly [5]  21/11 31/4 31/22 31/23 32/4
expressing [1]  36/14
expressly [3]  40/19 40/25 41/17

**F**

fact [9]  18/7 19/1 23/24 27/2 27/9 29/4 37/2 38/19 40/25
factor [1]  8/25
facts [1]  22/6
factual [1]  20/7
fall [4]  7/20 9/18 10/8 31/12
falls [2]  7/12 20/22
familiar [1]  24/16
far [1]  37/19
fashion [2]  24/9 24/15
federal [6]  5/4 8/7 8/22 17/4 29/23 40/18
female [1]  35/24
fields [1]  6/16
fifteen [1]  29/12
figure [5]  11/15 11/18 11/23 12/11 12/17
figures [2]  11/15 11/17
filter [1]  32/12
final [8]  15/7 26/19 27/1 32/19 35/20

36/7 37/12 37/17
financial [2]  5/14
find [1]  26/7
fine [2]  9/10 14/3
Finger [2]  2/2 3/16
firm [1]  3/16
first [12]  10/16 12/12 15/25 18/11 20/17 21/7 23/7 24/4 35/12 37/21 37/24 38/8
five [2]  11/15 11/18
flexibility [1]  41/24
flip [1]  34/18
focus [4]  22/17 23/12 25/24 40/9
focused [3]  38/16 39/17 39/19
fold [1]  15/25
FOLLOWS [1]  2/1
force [37]  4/16 4/17 4/23 10/13 11/3 11/6 12/1 12/2 12/22 13/4 13/4 13/13 13/16 13/17 13/22 14/9 14/18 20/3 23/13 23/20 24/5 24/12 24/24 25/3 25/6 32/2 32/6 32/21 32/25 33/17 33/18 34/24 35/6 36/1 37/4 38/1 41/13
foregoing [1]  43/6
formatting [2]  37/22 39/2
found [12]  7/10 8/23 9/17 19/19 21/10
four [4]  10/23 13/10 22/11 33/12
Fred [1]  3/15
FREDERICK [1]  2/2
freely [1]  32/14
fully [1]  16/16
function [1]  25/12
functional [22]  11/5 15/16 15/20 21/18 22/2 22/22 23/5 23/11 23/22 23/25 24/16 25/8 25/15 25/17 25/19 26/21 27/10 30/24 33/15 34/5 37/15 38/15
functions [1]  24/4
further [2]  38/2 41/19
future [5]  10/2 36/8 36/9 36/15 37/1

**G**

GARBER [2]  2/5 3/17
gather [1]  17/9
general [1]  39/15
generates [1]  6/17
GEORG [2]  2/9 3/21
get [5]  7/15 12/25 21/6 35/15 40/5
give [3]  20/18 34/2 39/5
given [1]  28/18
glean [1]  40/11
go [2]  9/9 21/1
goal [1]  16/14
goes [4]  31/16 37/20 40/7 40/17
going [5]  7/15 9/6 11/14 33/7 33/20
Good [3]  3/12 3/18 3/25
ground [1]  40/23
guess [1]  16/16
guide [2]  21/5 29/24

**H**

had [2]  7/1 41/16
Hamilton [6]  5/21 7/24 19/11 31/3 41/1 41/3
hand [1]  7/25
handheld [1]  6/22
handle [1]  41/24
happen [1]  37/8
happening [3]  36/6 36/24 36/25
has [23]  4/7 6/3 7/19 7/19 8/7 8/15 8/18 10/13 13/3 13/4 13/4 16/10 16/19 20/3 23/5 25/4 26/2 29/23 33/14 33/14 34/15 40/18 40/25 41/20

Haug [4]  2/8
have [37]  3/6 3/21 3/6 13/11 14/3 14/4 14/4 15/2 15/17 15/22 15/24 16/8 16/22 17/18 17/25 19/9 19/13 20/17 22/5 23/24 25/24 26/5 26/8 29/22 31/18 32/2 33/10 33/21 34/3 34/18 34/19 35/10 36/12 37/6 39/19 40/22 41/19
having [1]  22/23
he [3]  12/3 13/3 39/10
He's [2]  38/25 39/1
head [1]  22/24
heard [1]  39/7
hearing [3]  1/13 3/2 41/24
heat [1]  6/2
held [4]  1/13 1/15 29/23 36/11
help [1]  28/7
here [20]  3/1 7/16 10/17 12/17 14/16 16/6 18/20 21/6 21/23 22/25 23/25 25/16 25/19 25/25 26/25 32/1 35/20 36/1 37/3 40/9
hereby [1]  43/5
herein [3]  29/15 29/21 43/8
HOESCHEN [2]  2/7 3/23
hold [1]  6/4
holding [1]  40/23
Honor [22]  3/9 3/12 3/20 17/21 19/9 20/13 20/22 21/22 22/5 26/14 27/3 28/10 30/6 30/22 31/14 33/9 33/25 34/23 35/7 35/14 40/4 41/20
Honor's [1]  27/13
Honorable [1]  1/14
HOPE [2]  2/5 3/17
how [5]  9/19 14/15 26/12 33/5 35/4
HTC [1]  8/12
human [6]  8/24 17/10 19/18 19/22 31/7 31/8
humans [1]  17/25
hybrid [3]  4/11 5/2 20/20

**I**

I'll [1]  35/11
I'm [8]  11/14 17/15 22/7 32/24 33/20 35/17 38/12 40/23
idea [2]  12/21 36/12
identified [1]  16/23
identify [1]  23/18
if [25]  5/9 6/5 7/5 7/14 7/25 9/24 10/2 11/8 14/24 15/6 15/15 17/17 18/3 21/7 21/11 21/11 21/17 21/24 26/18 27/13 31/21 35/14 35/15 41/3 41/6
III [1]  2/2
image [1]  6/22
impact [1]  22/22
implant [6]  11/5 11/20 11/25 13/14 22/11 23/10
implants [2]  10/24 35/25
implicit [2]  31/6 41/6
implicitly [1]  31/5
important [7]  19/13 20/18 21/3 22/18 24/25 25/1 40/14
in [137]
inanimate [1]  7/9
include [4]  4/13 28/19 29/3 30/23
includes [2]  5/10 22/10
including [1]  4/23
indefinite [25]  4/9 4/10 4/25 5/9 5/13 5/19 5/24 6/5 6/12 6/20 7/22 7/22 8/3 8/23 9/17 10/10 19/20 21/10 21/17 25/23 26/8 31/20 31/22 35/22 38/10
indefiniteness [2]  5/3 7/13

**I**

indent [1] 37/20
indentation [3] 37/19 37/23 38/4
indented [1] 37/17
independent [2] 10/19 13/8
indicate [1] 29/6
indication [1] 23/21
inform [2] 34/12 34/16
information [2] 5/16 7/4
informative [1] 18/19
infringed [1] 10/4
infringement [8] 4/20 15/3 15/4 26/13
34/22 40/1 40/3 40/6
input [1] 5/15
insert [3] 5/25 19/23 32/11
inserted [2] 22/14 38/20
inserting [1] 41/8
installment [1] 22/16
instead [2] 7/6 21/19
instructive [1] 20/6
interested [1] 43/10
interesting [1] 18/19
interphase [1] 5/20
interpreting [1] 29/25
interrupt [1] 30/14
into [5] 5/25 32/12 32/13 32/14 40/5
invention [9] 18/20 22/14 24/20 26/6
34/13 34/17 39/21 39/23 40/13
inventors [2] 25/15 25/16
invite [2] 35/12 37/11
invoked [1] 39/10
involve [1] 15/4
involved [1] 41/23
involves [1] 42/1
IPXL [6] 5/4 5/12 7/23 17/23 31/3 40/22
is [181]
isn't [1] 33/3
isolation [1] 21/20
issue [9] 8/8 8/20 10/6 11/2 16/22 17/3
20/19 21/23 27/7
issued [1] 15/23
issues [2] 40/2 40/5
it [71]
it's [25] 4/19 9/3 10/2 12/6 12/22 13/9
16/6 16/6 16/7 16/19 18/19 20/21 20/23
21/25 22/18 25/13 33/16 36/14 37/7
38/11 39/16 39/18 41/6 41/6 41/10
its [2] 18/11 33/14
itself [4] 8/5 26/22 28/17 32/7

**J**

jaw [8] 11/12 12/4 12/24 23/1 23/3 23/9
23/15 29/16
JCB [1] 1/4
jig [2] 9/22 9/23
Judge [1] 1/15
judicata [1] 15/13
judicial [1] 15/14
just [21] 8/4 9/12 9/13 10/16 10/17 11/14
12/8 13/7 13/19 17/13 17/15 18/17
19/10 29/11 30/15 39/5 39/9 40/16 41/6
41/9 41/15

**K**

Katz [5] 5/18 7/24 9/4 17/22 40/22
keep [1] 40/15
Keller [2] 2/6 3/24
KELSEY [2] 2/4 3/13
key [2] 25/3 25/3
KIMBERLY [3] 1/25 43/4 43/14

kin [1] 43/9
knew [7] 14/5 14/7 16/16 18/17 26/12
27/8 28/4
knowledge [1] 40/7
knows [1] 31/14

**L**

language [36]  5/6 7/1 7/6 8/19 8/23 9/24
10/17 11/16 15/1 15/17 15/20 16/2 16/5
16/16 16/22 18/1 18/24 19/13 19/14
21/5 21/18 21/22 22/2 25/2 25/9 25/25
26/2 29/25 31/13 34/4 36/2 38/10 39/12
39/17 40/24 41/18
last [3] 18/4 36/20 38/23
later [3] 15/10 22/15 27/15
latest [1] 9/2
law [8] 5/6 14/15 19/4 23/20 27/8 28/4
31/11 40/12
Layton [2] 2/2 3/16
least [3] 15/13 34/12 37/25
legally [1] 18/16
lends [1] 28/13
let [7] 16/25 20/16 27/20 29/9 35/11
37/10 39/5
level [2] 37/23 38/4
lid [1] 32/13
lift [1] 32/13
lifting [1] 12/23
light [1] 21/23
like [14] 4/3 9/7 10/1 13/19 14/11 16/6
16/15 17/23 21/1 21/21 22/8 31/3 31/7
41/10
limitation [28]  5/10 5/13 6/5 6/12 6/21
9/19 10/10 11/2 11/3 13/1 13/11 13/12
13/16 19/21 23/11 23/17 23/21 23/22
24/16 25/8 25/15 25/19 26/21 32/20
34/5 34/6 37/16 38/23
limitations [11]  14/1 14/4 14/16 15/7
22/21 22/22 23/4 23/6 23/25 24/22
25/18 27/9 27/10 30/24 33/14 33/15
33/16
limited [2] 20/23 27/5
line [7] 3/14 3/22 5/3 7/13 10/7 18/11
29/18
lines [2] 29/12 29/19
link [1] 22/24
little [2] 24/21 39/16
LLC [2] 1/4 1/6
LLP [2] 2/6 2/8
local [2] 3/14 3/23
logistical [1] 42/1
look [18] 5/6 7/15 9/24 13/25 15/23
17/22 17/23 19/14 21/22 22/9 25/20
29/10 34/3 35/13 37/11 40/1 40/10 41/3
looking [5] 17/20 22/7 35/18 38/24 40/15
loosen [1] 32/3
lower [1] 29/16

**M**

machine [10]  6/1 6/1 8/1 8/25 9/7 9/8
19/24 24/18 31/7 32/12
made [1] 4/21
Mainly [1] 19/23
make [5] 3/7 27/5 31/2 40/17 41/15
maker [2] 19/11 32/9
makes [4] 21/15 21/16 22/15 35/21
making [2] 9/13 18/6
male [2] 24/9 35/23
many [2] 16/3 16/3
MARK [2] 2/9 3/9

Master [5]  6/9 6/24 8/2 8/11 40/21
matter [3] 15/22 40/9 40/12
matters [3]  8/18 14/15 39/2
may [6]  4/6 15/2 20/14 26/16 27/14
35/14
maybe [1] 30/16
me [9]  3/14 16/15 16/25 20/16 27/20
29/9 29/19 37/10 39/5 43/7
mean [1] 34/22
meaning [2]  16/11 16/21
means [1] 5/15
mechanical [1] 41/25
Medical [1] 36/10
mens [1] 15/5
mention [1] 19/17
mentioned [1] 19/2
merely [3] 6/5 9/19 14/1
method [24]  4/13 4/14 4/19 18/25 19/2
23/23 27/10 28/3 28/4 28/9 28/11 28/12
28/16 28/19 28/25 29/5 29/7 29/8 32/8
32/15 32/16 34/6 39/21 40/4
methods [16]  18/9 18/12 18/14 28/1
29/4 29/14 29/17 29/21 30/3 30/5 30/7
30/12 30/16 30/18 30/20 39/22
mind [1] 40/15
Mine [6]  6/9 6/24 8/2 8/11 40/21
mix [1] 40/12
mixed [1] 39/21
modifications [1] 38/6
module [5]  6/13 7/2 7/3 7/9 8/3
moment [1] 21/6
more [3]  9/14 12/17 19/9
morning [5]  3/1 3/12 3/18 3/25 5/1
most [1] 19/15
motion [12]  1/13 3/2 4/3 10/6 11/2 15/17
18/5 22/18 23/12 26/24 27/7 42/3
move [1] 11/14
moved [1] 4/7
Mr [6]  4/2 6/23 20/9 26/17 27/21 41/22
Mr. [8]  20/10 26/16 27/20 32/18 33/23
35/8 35/9 41/22
Mr. Chapman [1] 35/9
Mr. Nix [7]  20/10 26/16 27/20 32/18
33/23 35/8 41/22
much [3]  20/13 40/9 40/12
multiple [4]  25/11 28/23 33/1 35/3
must [1] 13/23
muster [1] 25/22
my [8]  3/16 3/21 9/13 10/16 17/21 18/4
35/12 37/11

**N**

namely [2]  6/14 10/12
narrow [1] 20/21
NATHAN [2]  2/7 3/23
nature [1] 32/23
necessarily [1] 33/3
necessary [1] 26/23
need [1] 40/19
needs [1] 16/24
neither [1] 43/8
network [1] 17/7
never [1] 10/3
next [3]  11/14 12/5 13/8
nine [12]  10/21 13/7 13/20 15/8 24/8
24/22 26/10 26/20 34/11 35/13 35/18
37/18
nineteen [1] 29/13
NIX [9]  2/4 3/13 20/10 26/16 27/20
32/18 33/23 35/8 41/22

## N

no [3]  38/8 41/10 41/16
nor [2]  43/9 43/10
not [54]
note [1]  23/17
noted [2]  20/22 27/16
notice [3]  8/9 15/2 18/5
noticed [1]  37/16
November [1]  1/16
now [9]  6/3 10/19 11/8 15/10 15/12
 23/17 24/14 32/24 36/4
number [4]  3/3 10/20 20/17 20/18

## O

object [1]  7/9
obvious [1]  16/7
obviously [1]  10/6
occurred [1]  26/13
occurs [3]  4/20 15/3 34/22
off [3]  12/3 12/10 12/23
Okay [3]  19/8 30/9 31/1
on [32]  1/15 3/2 3/14 3/22 5/3 7/12 7/25
 8/11 9/18 12/17 16/11 16/20 17/24
 19/21 24/10 25/24 26/22 25/8 28/16
 29/2 31/2 31/13 32/10 35/12 35/19
 38/16 39/17 39/19 40/9 40/22 41/4 42/3
Once [1]  24/18
one [44]
ones [1]  9/3
only [5]  4/21 21/10 21/12 30/18 31/22
onward [1]  8/22
opening [2]  11/18 12/6
operated [1]  31/8
opportunity [1]  27/14
opposed [2]  6/7 31/24
opposing [1]  33/21
opposition [2]  6/11 25/10
or [44]
ordinarily [1]  24/19
ordinary [9]  16/7 16/11 16/21 24/17 26/3
 31/21 35/1 39/12 40/10
ordinary-type [1]  24/17
original [1]  17/7
originating [1]  17/8
other [5]  7/25 13/8 17/8 29/10 40/21
otherwise [1]  15/18
our [15]  3/22 10/9 11/17 11/17 12/6
 12/18 12/25 13/19 18/24 19/15 20/1
 25/9 32/16 32/17 37/2
out [8]  16/18 18/6 18/24 19/10 28/24
 36/21 38/25 39/1
outcome [1]  43/10
over [1]  8/8
overall [1]  19/5
owner [1]  16/1

## P

p.m [1]  42/5
pack [1]  32/13
paraphrase [1]  30/15
parse [1]  33/3
part [6]  15/9 18/14 22/18 27/6 34/7 38/8
participant [4]  17/8 17/9 17/10 43/9
participates [1]  17/9
particular [4]  8/2 31/13 32/6 35/6
parties [3]  3/7 36/17
Partners [1]  2/8
parts [2]  29/10 30/2
party [2]  28/20 43/9
pass [1]  25/22

passage [1]  12/7
patent [29]  4/9 5/7 10/20 11/9 12/12
 12/19 12/20 15/23 16/1 16/1 18/7 18/10
 18/15 19/6 20/2 25/13 27/22 28/4 28/23
 28/25 30/3 30/5 30/13 30/17 30/18 33/2
 35/13 37/16 37/20
patentable [2]  39/20 39/23
patentee [2]  12/19 14/3
patents [1]  28/18
path [1]  11/23
patient's [7]  11/12 12/4 12/24 23/1 23/3
 23/9 23/15
perfectly [1]  22/3
perform [7]  5/11 6/8 7/20 10/12 13/3
 24/3 25/12
performed [2]  14/17 31/18
perhaps [2]  15/14 18/16
permanent [1]  22/16
permit [1]  32/14
person [2]  26/3 26/5
Phillips [1]  29/23
phrase [1]  36/7
physical [5]  22/21 23/3 25/17 33/12
 33/14
pick [16]  11/6 11/8 11/21 11/22 12/13
 13/13 13/18 13/22 18/8 24/12 36/1 36/3
 36/5 36/22 37/3 37/4
pick-up [16]  11/6 11/8 11/21 11/22 12/13
 13/13 13/18 13/22 18/8 24/12 36/1 36/3
 36/5 36/22 37/3 37/4
picking [1]  12/14
picks [1]  11/11
picture [1]  14/22
place [2]  24/19 32/12
placed [1]  28/16
plain [2]  16/11 16/21
plaintiff [12]  2/3 2/5 3/13 6/3 8/11 9/15
 15/15 15/15 16/19 20/11 37/14 39/8
plaintiff's [6]  4/7 6/11 20/1 27/8 31/2
 39/6
please [2]  3/7 4/6
point [12]  7/16 16/18 17/24 18/24 19/5
 19/10 21/14 21/16 33/19 35/19 37/3
 40/16
pointed [2]  36/21 41/1
Pointer [2]  6/19 8/13
pointing [1]  6/22
points [1]  19/3
portion [2]  22/25 23/2
position [1]  27/8
positioned [1]  9/25
post [2]  13/14 35/23
poured [1]  32/14
power [1]  35/19
precedential [1]  17/14
predetermined [2]  24/12 35/25
predicate [1]  28/22
predicted [1]  5/16
present [2]  36/16 36/19
presentation [1]  4/4
presented [2]  7/6 10/6
presents [1]  6/15
presumably [1]  15/18
primary [1]  8/9
principle [2]  20/20 40/14
principles [5]  20/19 21/4 21/23 31/11
 34/2
prior [1]  11/20
procedure [7]  4/16 11/10 18/21 18/22
 19/7 38/17 38/21

proceed [2]  20/15 22/15
proceedings [2]  42/9 43/7
process [6]  11/21 11/23 26/22 27/2 28/3
 28/5
processing [9]  11/7 11/8 12/13 13/18
 13/22 36/3 36/5 36/23 37/5
product [1]  28/1
products [2]  30/19 30/19
professional [6]  26/4 26/9 33/5 33/10
 34/21 43/5 43/15
prominently [1]  6/10
proper [1]  25/18
properly [1]  34/11
prostheses [1]  29/15
prothesis [1]  12/9
provides [1]  7/7
providing [1]  7/11
proximal [9]  22/24 22/25 23/13 24/6
 24/13 24/24 32/2 34/24 36/1
proximate [1]  33/17
prying [1]  12/3
pulled [1]  12/10
pulling [2]  38/25 39/1
purely [1]  37/22
purposes [1]  27/18
pursues [1]  16/2
put [2]  24/17 41/4

## Q

question [8]  14/22 18/4 26/17 27/21 33/3
 33/20 35/12 37/11
questions [2]  35/10 41/20
quickly [1]  13/7 17/20
quote [4]  18/11 24/11 29/20 29/21
quoted [1]  12/6

## R

re [1]  35/15
re-get [1]  35/15
rea [1]  15/5
reaction [1]  17/21
read [4]  11/8 19/20 26/2 33/5
reader [2]  15/1 38/4
reading [3]  26/9 26/19 34/21
really [3]  14/15 19/14 31/16
reason [2]  18/13 38/11
reasonable [3]  26/5 34/13 34/17
reasonably [1]  39/12
reasons [1]  19/16
receive [1]  21/13
receives [2]  6/16 7/3
receiving [1]  7/9
recite [6]  23/18 24/22 40/19 40/25 41/5
 41/17
recited [2]  17/6 36/6
recites [4]  10/22 14/25 23/12 31/4
recognizable [1]  18/17
refer [2]  21/24 27/25
reference [2]  21/9 29/17
referring [1]  18/3
refers [3]  21/8 29/20 35/22
refinement [1]  38/2
regarding [1]  6/24
Registered [2]  43/4 43/15
reinforces [1]  37/2
REITBOECK [2]  2/9 3/22
release [18]  4/17 10/14 11/4 13/5 13/13
 13/23 14/10 24/6 24/10 24/23 25/5 35/5
 35/23 36/15 36/17 37/6 37/8 41/14
released [7]  11/25 12/15 12/21 14/8

## R

released... [3]  14/11 14/20 20/4
releases [5]  4/23 23/15 32/25 33/17 34/24
relevant [2]  19/4 38/19
reliance [1]  31/2
relies [1]  32/10
relying [2]  8/11 16/20
Rembrandt [1]  9/4
remove [2]  11/12 15/11
repeats [1]  12/8
reply [2]  35/9 39/6
reported [1]  43/7
Reporter [2]  43/5 43/15
reporting [5]  6/13 7/2 7/3 8/3 33/4
require [2]  19/22 20/2 32/11
required [5]  5/14 5/19 5/24 17/25 27/6
requirement [1]  40/7
requires [7]  4/14 5/10 10/11 11/3 13/2 13/12 13/20
requiring [1]  6/7
res [1]  15/13
reservoir [2]  32/13 32/15
resolve [2]  15/21 27/7
respect [1]  8/2
respond [4]  21/13 22/1 31/25 39/9
response [10]  13/16 13/17 15/25 24/11 24/23 25/5 32/5 35/6 36/3 36/22
result [4]  4/24 7/5 14/19 34/8
rewrite [2]  16/4 16/15
Richards [2]  2/2 3/15
right [14]  3/18 7/17 9/5 14/21 18/21 20/8 20/14 29/9 30/22 33/21 35/17 37/10 39/4 41/21
rise [1]  31/12
rotatable [6]  23/8 24/5 33/16 38/3 38/13 38/18
rotate [1]  38/22
rotates [1]  23/19
rotating [1]  23/9
routinely [1]  28/20
RPR [1]  1/25
Rule [1]  4/8
ruling [2]  26/22 27/18

## S

said [4]  7/7 12/8 14/4 43/10
same [12]  7/12 12/21 13/9 13/10 19/25 26/17 27/21 28/5 29/2 36/8 37/23 38/4
satisfies [1]  25/7
satisfy [1]  25/8
save [1]  33/20
say [10]  8/20 16/3 18/18 32/20 32/22 32/24 34/1 36/12 36/20 39/8
saying [3]  20/17 30/2 30/15
says [4]  18/10 29/13 32/1 36/21
scope [6]  7/21 16/13 26/6 26/11 34/13 34/16
screen [1]  41/4
screw [52]
screwdriver [1]  38/21
screws [5]  22/12 24/17 24/17 24/20 33/13
second [9]  21/1 21/14 21/15 22/2 23/11 24/5 37/11 37/21 40/16
Section [2]  34/10 39/24
see [7]  7/23 7/23 7/24 9/5 10/22 11/18 12/1
seems [2]  10/1 36/7
seen [1]  19/3

selectable [1]  6/15
selection [1]  6/17
sends [2]  17/8 17/11
sense [1]  39/18
sensor [1]  6/22
sentence [1]  29/20
separate [1]  39/22
separately [2]  36/4 37/18
sequence [2]  32/8 33/4
serves [1]  28/22
set [2]  6/15 30/11
sets [1]  28/23
seven [2]  29/12 29/13
Shaw [2]  2/6 3/24
she [2]  12/3 13/3
should [2]  3/21 16/8
show [5]  10/17 11/15 12/1 34/19 35/16
shown [1]  12/10
shows [1]  11/23
side [4]  7/13 9/18 10/7 34/18
similar [1]  24/9
Similarly [2]  6/19 29/18
simply [2]  15/6 26/14
since [2]  4/2 38/3
single [1]  29/24
six [6]  11/15 11/23 12/11 23/3 29/18 29/19
skill [6]  16/8 26/3 31/21 35/2 39/13 40/10
skilled [2]  34/12 34/16
slide [6]  10/17 11/15 12/5 12/17 13/8 19/21
slides [1]  35/15
SMART [2]  1/4 3/4
Smith [2]  2/4 3/17
so [44]
software [1]  6/14
sold [1]  4/21
some [5]  5/11 7/20 9/6 30/23 37/25
someone [1]  4/22
something [7]  7/10 18/1 18/14 19/23 20/2 31/5 37/7
sorry [2]  30/14 38/12
sounds [1]  16/14
specific [5]  8/19 25/4 25/20 25/25 31/13
specifically [1]  21/18
specification [12]  11/22 12/7 25/10 28/13 28/21 28/22 29/11 29/24 30/4 30/10 30/16 35/4
specifications [2]  29/3 30/2
stage [3]  15/10 27/4 38/20
standard [2]  39/11 39/15
standards [1]  15/4
start [1]  20/17
started [1]  31/17
starting [1]  33/6
state [2]  26/20 26/22
stated [4]  7/3 36/18 40/19 43/8
states [4]  1/1 11/5 13/15 13/17
stating [1]  36/25
statutory [3]  39/20 39/23 40/13
stay [1]  24/19
step [11]  4/13 4/14 4/19 11/9 23/23 29/8 32/8 34/6 38/17 38/24 39/4
steps [3]  27/11 32/8 32/15
still [3]  19/19 30/24 31/9
STRAUMANN [4]  1/6 3/5 3/10 4/7
Straumann's [1]  27/17
structure [8]  13/9 21/19 22/4 23/23 25/4 25/7 25/14 25/20

structured [1]  24/3
structures [2]  25/12 28/4
subject [5]  7/1 7/7 8/25 31/6 31/7
submission [4]  10/9 12/25 13/20 42/4
submit [4]  26/14 33/9 34/10 34/23
subsequent [1]  38/24
such [1]  32/21
suggestion [1]  41/16
summarize [3]  33/23 34/1 35/11
support [2]  30/11 30/17
supposed [2]  28/6 30/1
sure [1]  41/15
system [26]  4/12 4/15 4/21 4/22 5/15 5/20 7/11 10/11 10/13 10/23 13/2 13/10 13/21 18/8 18/12 19/6 21/16 22/10 27/12 28/1 28/2 28/9 33/7 41/6 41/7 41/12
system's [3]  21/12 21/25 31/24
systems [3]  29/14 29/20 30/3

## T

take [4]  5/8 14/14 24/25 25/1
taken [1]  17/18
talk [1]  19/18
talked [2]  21/2 30/22
talking [1]  33/11
talks [1]  21/4
technical [2]  39/18 40/11
teleconference [1]  1/15
telephone [2]  5/20 41/25
temporary [44]
tense [6]  10/2 36/8 36/9 36/15 36/16 36/19
term [3]  16/23 18/3 31/22
terms [1]  37/21
test [2]  26/1 33/5
than [1]  40/4
thank [11]  3/11 4/5 20/9 20/12 20/16 33/24 35/7 35/8 41/22 41/22 41/23
that [223]
that's [20]  9/10 11/2 14/12 15/16 17/14 18/22 19/15 20/24 21/22 22/14 27/6 29/17 30/20 30/21 32/16 34/15 36/6 37/8 39/14 40/14
their [3]  3/7 25/16 26/10
them [5]  11/12 16/13 24/18 24/20 40/11
then [14]  5/6 8/3 11/1 11/22 12/5 12/15 13/10 17/10 34/7 35/11 36/20 37/10 38/4 39/4
there [21]  7/1 7/8 7/10 8/6 8/15 8/18 10/19 16/3 18/13 21/9 27/14 28/24 29/14 33/1 34/19 36/5 37/19 37/20 40/6 41/10 41/16
thereof [1]  43/11
these [14]  7/15 11/16 14/1 14/4 15/7 16/12 19/3 23/25 26/7 27/1 29/8 30/7 30/23 33/12
they [30]  4/11 4/12 5/19 5/24 7/20 7/21 9/18 11/17 16/8 16/20 16/22 17/23 21/17 24/3 24/14 24/18 24/23 26/1 26/12 27/10 27/25 29/7 31/11 32/22 32/23 34/18 35/2 39/25 40/22 41/4
they're [4]  4/11 25/23 29/7 38/3
thing [2]  7/12 19/10
things [1]  39/8
think [33]  7/5 7/14 7/18 8/6 8/15 8/17 8/18 9/2 9/3 9/12 13/25 14/14 15/24 16/6 16/10 17/12 17/16 18/19 19/1 19/12 19/12 19/14 20/6 27/16 29/22 31/8 33/21 36/13 37/2 37/14 39/2 40/4

## T

think... [1] 40/14
this [90]
those [11]  17/23 17/24 18/16 21/23 23/3
  27/9 30/2 31/9 32/15 34/12 38/6
though [2]  19/17 30/19
thread [4]  24/10 24/11 37/5 38/12
threading [2]  35/23 35/24
threads [3]  35/22 35/24 38/22
through [2]  9/13 29/13
tied [3]  21/19 22/3 25/20
time [2]  8/8 15/23
title [6]  18/7 18/16 19/1 27/22 29/5 29/11
totally [1]  39/22
touch [1]  9/14
toward [1]  23/9
towards [1]  23/2
trans [1]  23/14
transaction [3]  5/15 5/16 5/17
transcript [2]  1/10 43/6
treating [1]  38/1
treatment [1]  8/8
tried [1]  12/20
tries [1]  15/15
true [2]  31/14 37/18
turn [1]  10/16
turns [1]  28/24
two [15]  10/19 12/1 12/13 15/25 19/16
  21/23 22/12 23/5 25/11 27/1 27/2 27/9
  33/13 35/10 40/13
two-fold [1]  15/25
type [1]  24/17
typo [1]  16/7

## U

U.S.A [1]  3/5
ultimate [3]  6/19 7/16 8/12
ultimately [2]  25/24 31/12
uncertainty [1]  4/25
unclear [1]  4/20
under [6]  4/8 18/1 19/4 23/20 34/10
  39/23
understand [4]  14/24 33/6 35/2 38/5
understanding [2]  12/18 33/11
UNITED [1]  1/1
unless [2]  24/19 41/19
unscrew [1]  24/19
unscrewing [1]  39/1
unusual [1]  39/16
up [22]  11/6 11/8 11/11 11/21 11/22
  12/13 12/14 13/13 13/18 13/22 18/8
  18/25 19/21 24/12 36/1 36/3 36/5 36/22
  37/3 37/4 39/21 41/4
upon [2]  9/14 14/8
upper [1]  29/16
us [3]  20/18 20/19 34/2
USA [1]  1/6
USDC [1]  1/14
use [7]  5/15 13/21 18/14 19/7 26/1
  28/10 38/5
used [5]  16/8 18/22 29/5 29/15 36/9
user [31]  5/10 5/14 5/19 5/24 6/7 6/15
  6/16 7/4 7/6 7/7 7/11 7/19 7/19 8/24
  10/11 13/2 13/21 14/17 19/19 21/8 21/9
  31/4 31/18 32/11 37/4 37/7 40/20 40/25
  41/5 41/7 41/17
user's [5]  21/13 21/24 22/1 31/23 31/25
uses [3]  4/22 31/5 38/9
using [7]  4/15 10/13 24/15 24/17 36/8
  38/21 41/12

## V

vague [2]  31/20 39/18
various [1]  16/5
verb [9]  7/1 7/2 9/1 17/10 31/5 36/15
  36/16 36/17 36/18
verb is [1]  36/16
versus [3]  3/4 17/2 36/10
very [12]  13/7 19/25 20/8 20/13 20/21
  20/23 21/3 22/18 25/18 29/1 32/6 41/21
via [1]  1/15
visual [2]  37/25 38/5

## W

want [2]  33/23 36/2
wanted [7]  5/1 5/5 9/14 19/10 39/9
  40/16 41/15
was [20]  5/2 6/10 7/10 7/15 8/12 8/12
  8/13 9/12 9/12 9/12 17/13 17/16 17/22
  19/22 34/20 36/9 36/11 38/1 39/10
  41/16
water [3]  6/2 32/14 32/15
way [11]  9/6 9/13 13/25 14/12 19/25
  20/24 29/6 33/8 36/8 36/25 40/1
ways [1]  33/1
we [19]  7/23 7/23 7/24 13/25 18/24
  19/10 19/25 20/6 20/17 23/24 25/9
  25/20 25/21 25/24 30/22 34/3 34/8
  38/23 41/8
we're [3]  3/1 24/16 38/16
weight [1]  28/13
well [13]  3/22 4/1 4/2 20/8 22/19 27/22
  29/1 33/19 35/11 37/19 39/4 41/21 42/2
were [10]  5/13 5/18 5/23 6/11 6/20 9/17
  15/6 17/17 30/6 42/5
what [27]  5/1 7/19 8/1 8/18 8/19 12/8
  16/16 16/18 21/21 23/24 24/25 25/21
  25/24 26/11 28/5 30/1 30/20 31/1 31/16
  32/4 32/5 33/4 34/21 36/12 37/8 40/2
  40/10
when [13]  4/20 4/21 7/18 12/12 12/25
  15/2 17/22 19/20 33/17 34/3 34/22
  36/23 40/15
where [11]  8/22 9/12 9/16 9/19 11/10
  24/9 25/10 26/12 31/3 32/10 38/25
Whereas [1]  8/10
wherein [15]  17/7 23/7 23/13 24/4 24/5
  32/1 32/20 34/23 36/7 37/15 37/17
  37/21 37/21 37/24 38/9
whether [11]  4/20 12/3 15/3 16/12 25/23
  26/1 26/4 28/15 39/17 39/19 40/6
which [30]  5/22 6/10 7/10 7/12 8/11 8/12
  8/13 8/13 9/14 9/25 10/7 12/8 12/8
  12/14 12/18 14/11 14/19 15/4 17/3 19/6
  21/6 23/12 26/18 30/24 31/14 36/15
  37/3 39/11 39/20 41/4
who [7]  10/12 12/23 16/1 23/18 28/18
  41/11 41/12
whole [2]  26/7 27/11
why [4]  24/14 32/19 32/22 32/23
widely [1]  25/13
width [1]  22/24
will [10]  9/25 10/16 14/11 20/10 20/12
  21/6 24/6 28/18 31/19 41/7
win [1]  26/23
within [4]  7/20 16/12 17/14 37/23
without [1]  31/6
won [1]  15/17
word [4]  16/9 28/11 28/19 29/5
words [1]  16/12
worth [1]  16/19

## Y (first column, top right)

would [41]  4/3 7/5 14/3 15/10 15/17
  18/18 19/21 16/1 16/18 17/18 18/18
  21/1 21/5 21/21 22/8 25/8 26/5 26/8
  26/10 26/12 26/23 27/16 27/17 29/2
  29/3 29/22 30/10 30/17 31/12 33/5
  33/10 34/1 34/7 34/18 34/19 35/2 35/5
  36/20 38/5 38/10 41/8
wrapped [1]  18/25
Wright [1]  36/10
wrongly [2]  17/13 17/22

## Y

yada [3]  32/21 32/21 32/22
Yes [7]  7/14 18/4 20/12 22/7 27/24
  30/21 33/24
you [94]
You're [1]  30/15
your [38]  3/8 3/9 3/12 3/20 4/2 4/3 7/12
  8/9 8/14 17/21 18/5 19/9 20/13 20/22
  21/21 22/5 26/14 26/24 27/3 27/13 28/8
  28/10 30/5 30/22 31/14 32/19 33/9
  33/20 33/22 33/24 34/23 34/3 35/7 35/9
  35/14 35/21 40/4 41/20 41/24

## Z

zero [2]  28/13 33/10